UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANKLIN FOWLER and
BARBARA FOWLER,

      Plaintiffs,

    v.                            CASE NO. 8:09-cv-1368-T-27MAP

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiffs seek review of the Commissioner's decision

denying their son's claim for a period of disability and Disability Insurance Benefits ("DIB") at

step five of the sequential analysis.[1]  After considering the parties' briefs and the administrative

record in this case, I conclude the Commissioner's decision is in accordance with the law and

supported by substantial evidence.  I therefore recommend the Commissioner's decision be

affirmed.

*A. Background*

Claimant Leslie Kim Fowler was born on August 10, 1961.  (R. 24)  He completed 12th

grade and had past work experience as a laborer/machine operator and cleaner.  (R 24) Claimant

alleged disability commencing July 31, 2001.  After a hearing, the ALJ found Claimant had the

severe impairments of "obesity, degenerative joint disease of the knees, a Dupuytren's

contracture of the left index and small fingers, osteoarthritis of the shoulders and insulin

---

[1] Claimant Leslie Kim Fowler initiated this action on his own behalf seeking review of the
Commissioner's decision as to DIB and Supplemental Security Income.  Claimant passed away
during the pendency of this lawsuit, and his parents were substituted as parties.  Only the DIB
claim survived Claimant's death.  (R. 21, 22)

dependent diabetes mellitus." (R. 18) Aided by the testimony of a vocational expert, the ALJ

determined the Claimant was not disabled as he had the residual functional capacity to perform

work at the light exertional level with a sit/stand option throughout the workday and could

perform jobs that exist in significant number in the national economy (R. 24). The Appeals

Council denied review (R. 7).

### B. Standard of Review

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment'

is an impairment that results from anatomical, physiological, or psychological abnormalities

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

*See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process,

promulgated detailed regulations that are currently in effect. These regulations establish a

"sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R.

§ 404.1520. If an individual is found disabled at any point in the sequential review, further

inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must

determine, in sequence, the following: (1) whether the claimant is currently engaged in

substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that

significantly limits her ability to perform work-related functions); (3) whether the severe

impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P;

(4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).  A claimant is entitled to benefits only if unable to perform other work.  *See Bowen v. Yuckert,* 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings.  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

*C. Discussion*

The style and substance of Plaintiffs' legal memorandum (doc.  28) warrants a brief comment.  Local Rule 3.01(a) demands that counsel exercise some measure of precision in drafting a pleading: "movant shall include a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request …"  Plaintiffs' brief fails to state with any particularity the specific issues for the Court's

consideration.   Instead, Plaintiffs' counsel sets out cryptic headings and unfocused arguments to advance the general assertion that the ALJ erred at one or more steps of the sequential analysis. Unfortunately, this style of advocacy does little to advance the goals of Fed.  R.  Civ.  P.  1. Irrespective, this report generally adopts the Plaintiffs' headings and attempts to broadly interpret the arguments the Plaintiffs make under those headings so as to provide full review.

### 1. Dr. Ijewere's report

The Plaintiffs complain about the ALJ's use of a consultant examiner's findings (Dr. Ijewere) at step two, a step that presents "a threshold inquiry," *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986), and at subsequent steps of the analysis.  "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.  Claimant need show only that her impairment is not so slight and its effect is not so minimal."  *Id.*

None of the Plaintiffs' arguments here, whether dealing with the ALJ's evaluation of Dr. Ijewere's report or generally, has merit.[2]  The ALJ relied, in part, on Dr. Ijewere's August 2004 report (R.  442) to find the Claimant's suffered from several severe impairments.  Although much of the report inures to the Plaintiffs' benefit, at least for step two purposes, the Plaintiffs

---

[2]  Elsewhere in Plaintiffs' brief, Plaintiffs complain about the ALJ's failure to include the Claimant's depression and Dupuytren's contracture of the right hand as severe impairments.  The mere diagnosis of a condition, say Dupuytren's contracture, does not generally establish disability or even the severity of an impairment.  *Moore v.  Barnhart,* 405 F.23d 1208, 1213 n.  6 (11th Cir.2005).  In sum, the ALJ gave due consideration to the Plaintiff's impairments, severe or not, and explained his reasons for distinguishing those that he considered severe and those he did not (depression).  And more significantly, the ALJ was bound to consider the combined impact of all the Claimant's impairments (severe and non-severe) at step four of the analysis.

nonetheless take issue with the consultant's findings because Dr. Ijewere mistakenly referenced

the Claimant at times as a woman and correctly at times as a man.  Plaintiffs seize on the

erroneous gender reference, ignore the rest of the report, and argue the clerical mistake poisons

the report.  In short, the argument is specious and misleading.  And it patently misses the main

point – the physician accurately noted specific details regarding Claimant's work history, family

background, and impairments.  The ALJ's consideration of those findings (along with the other

medical evidence) at step two and the remaining steps was reasonable.  *See* R. 442-47; *see also*

R. 260-64 (April 2005 consultative examination report indicating no range of motion limitations

except with respect to Claimant's right knee); R. 436 (July 2005 physical residual functional

capacity assessment stating full range of motion except in right knee).

> 2.  pain

Plaintiffs next argue the ALJ erroneously rejected Claimant's testimony that he has

difficulty holding and grasping objects due to Dupuytren's contracture and arthritis.  Plaintiffs

contend the "ALJ's Decision does not explain how a person with such a deformed hand along

with arthritis has full use of his hands, and does not explain how [Claimant's] testimony that he

has difficulty holding and grasping objects should be ignored."  (doc. 28 at 6.)  The ALJ followed

the regulatory scheme in evaluating the Claimant's pain testimony.

An ALJ must consider a claimant's subjective testimony if he finds (1) evidence of an

underlying medical condition and (2) either (a) objective medical evidence that confirms the

severity of the alleged pain or other subjective symptoms arising from that condition or (b) that

the medical condition was of such severity as to reasonably give rise to the alleged pain or other

subjective symptoms.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation and

quotations omitted).  If the ALJ discredits a claimant's testimony as to pain or other subjective symptoms, he must "clearly articulate explicit and adequate reasons" for doing so.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotations and citation omitted).  This does not, however, require that the ALJ "cite particular phrases or formulations" in his credibility determination.  *Id.*  (citation and quotations omitted).

The ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the symptoms of which Claimant complained, but that Claimant's statements concerning the intensity, duration, and effects of the symptoms were not fully credible.  (R. 21) With respect to Claimant's physical (including grip) complaints, the ALJ concluded the record was "devoid of any evidence showing a significant degree of muscle atrophy, muscle spasm, a motor or sensory loss, reflex abnormality, or other significant neurological deficit."  (R. 23)  The ALJ further pointed out Dr. Ijewere's August 2004 examination revealed a full range of motion in Claimant's extremities, including his hands, and 5/5 strength of upper and lower extremities, including grip strength.  (R. 22, 444-47) Also, as pointed out by the ALJ, an April 2005 examination by Dr. Powell reported a 5/5 grip strength with normal dexterity of the hands and no weakness in any extremity due to repetitive flexion/extension.   (R. 22, 260) The April 2005 report further stated Claimant's arthritis "may cause interference with certain very fine dexterity movements," but that Claimant's condition was stable and he was largely able to perform his activities of daily living.[3]  (R. 261) Additionally, as the ALJ noted, a May 2007 examination by Dr. Leal indicates Claimant was neurologically grossly intact.  (R. 22, 503)  The ALJ further

---

[3]  Dr. Powell noted Claimant's right knee ligament damage was severe, but stated that Claimant most likely would be able to return to work following proper care.  (R. 261).  Claimant had knee surgery in July 2005.  (R. 627)

remarked that notes of Claimant's treating physician Dr. Jorge Gadea were unremarkable with no

evidence of any significant musculoskeletal or neurological abnormalities[4] (R. 21) and that since

surgery on his left hand in January 2006, Claimant had not required aggressive medical treatment

or further surgical intervention.  (R. 22)  Moreover, as the ALJ pointed out, Claimant had self-

reported that he was able to care for the majority of his personal needs independently.[5]  (R. 22,

157)  This evidence of record constitutes substantial evidence supporting the ALJ's

determination.[6]

      *3.  mental*

     Under this heading (doc.  28 at 10) Plaintiffs contend the ALJ erred in evaluating the

Claimant's residual functional capacity (RFC) by failing to account for the Claimant's

---

[4]  The records from Dr. Gadea include only sporadic complaints of hand and shoulder pain.
Although the records do regularly mention complaints of knee pain, the patient failed to go to
physical therapy after knee surgery as he was directed.  (R. 627)

[5] I note that, although not relied on by the ALJ, Claimant's claim for benefits is significantly
undermined by his long history of noncompliance with treatments ordered by his doctors.  20
C.F.R. § 404.1530(b); *see also* R. 319 (June 2003 doctor notes discussing Claimant's failure to
take his medication regularly); R. 291 (January 2005 doctor notes stating it was explained to
Claimant that his prognosis is poor as he continues to drink heavily and not take his medication
as directed); R. 627 (December 2005 doctor notes stating Claimant was "warned again of
consequences of nonadherence," that Claimant never went to physical therapy after his July 2005
right knee surgery, Claimant was not taking medication as prescribed, and Claimant never went
to his cardiology, psychiatric, or endocrine appointments); R. 520 (April 2006 doctor notes
stating Claimant was not taking his medications regularly or as prescribed, never went to an
endocrine appointment, and had been warned of the serious negative consequences of
non-adherence ); R. 467 (January 2007 hospital notes stating Claimant "is a 45-year-old male
with a history of medical noncompliance, diabetes on Insulin, and alcohol abuse"); R. 565 (April
2007 doctor notes stating chronic non-adharence to medical treatment for diabetic condition).

[6] It is unclear from Plaintiffs' memorandum whether they are attacking the ALJ's credibility
determination as to other claimed physical limitations.  To the extent Plaintiffs are making that
argument, I conclude the evidence recounted in the text above constitutes substantial evidence
supporting the ALJ's decision.

depression.[7]  The ALJ noted at the outset of his decision the regulatory directive that he consider

all impairments, both severe and non-severe, in assessing the Claimant's RFC (R.  16-17).  *See*

*Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); 20 C.F.R. § 404.1545(a)(2), (e).  And

importantly, he said he considered the entire record in assessing the Claimant's RFC.  (R. 20)

        In evaluating the Claimant's mental health evidence, the ALJ noted the Claimant had

reported he was able to care for the majority of his personal needs, drive, watch television, and

perform household chores. (R. 18-19; 156-58) Claimant had further reported he had friends and

was able to leave his house to shop and perform other errands. (R. 19, 159-60).  Additionally, the

ALJ noted the consultative psychologist, Dr. Pasman, reported in April 2005 that Claimant was

cooperative and respectful, with adequate impulse control and appropriate affect.  (R. 19, 269)

The ALJ further noted Dr. Pasman's evaluation of Claimant was "essentially unremarkable with

no evidence of psychotic thinking/thought processes" (R. 20) and stated Claimant had no

difficulty interacting with his representative at the hearing, behaved appropriately, and was able

to respond to all questions asked of him "in an appropriate manner with no overt lapses in

concentration."  (R. 19)   The ALJ further concluded there was no evidence Claimant had

suffered repeated episodes of decompensation or an inability to function outside of a highly

supportive living arrangement.  (R. 19)  The ALJ noted Dr. Botros-Mikail, a treating psychiatrist,

---

[7]  As covered in note 2, the Plaintiffs take issue with the ALJ's failure to find the Claimant's
depression a severe impairment for purposes of step two.  I read this portion of the Plaintiffs'
memorandum to also claim a step two error.  For the reasons stated in note 2, I find it
unnecessary to repeat the Plaintiffs' arguments here.  Besides, even assuming the ALJ should
have included the Claimant's depression as a severe impairment, that failure was harmless error.
*See Stokes v. Astrue,* 2009 WL 2216785 at *4 (M.D. Fla. 2009) (listing cases standing for the
proposition that the failure to consider the severity of all the impairments at step two does not
constitute reversible error if the ALJ proceeds past that step in the analysis).

in May 2007 rated Claimant's GAF at 50, indicated Claimant had marked limitations in numerous areas of functioning, and opined Claimant's condition would prevent him from working a normal workday.  (R. 23)   The ALJ discounted Dr. Botros-Mikail's findings, first noting the GAF is a subjective scale.  (R. 23)  The ALJ further stated: (1) there is no evidence Dr. Botros-Mikail examined Claimant prior to May 18, 2007 (although he gave a May 15, 2001 onset date), or performed any psychological testing on Claimant (R. 23-24);[8] (2) Dr. Botros-Mikail's findings appear based in large part on Claimant's subjective allegations (R. 24, 612-13); (3)  Dr. Botros-Mikail himself in May 2007 stated Claimant was "alert and oriented with normal speech and logical thought processes" (R. 23, 613); and (4) an April 2005 mental status evaluation by Dr. Pasman revealed Claimant to be "alert and fully oriented with normal attention and concentration."  (R. 23, 269)  These grounds are supported by the record and are sufficient bases on which to discount Dr. Botros-Mikail's opinions and the severity of Claimant's asserted mental impairment.[9]  On these bases, I conclude Plaintiff's argument is without merit.

        4.  *ALJ bias*

        Frankly, I find the Plaintiffs' use of the term, "bias," confusing.  If Plaintiffs contends the ALJ harbored "a highly personal and unreasoned distortion of judgment" against the Claimant, the Plaintiffs offer no proof of such.  *See Webster's New Collegiate Dictionary* (1979).  It appears, however, that the Plaintiffs' use of that term is directed to the following: (1) posing the

---

[8] Claimant's last date insured was September 30, 2007.  To be eligible for disability benefits, a claimant must show that he became disabled before his disability insured status expired.  20 C.F.R. § 404.131; *see also Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

[9] I note, moreover, that the accuracy of the information on which Dr. Botros-Mikail relied is suspect, *e.g.*, his May 2007 notes state Claimant denied any substance abuse (R. 613), a denial not supported by the record.

hypothetical to the claimant rather than the VE; (2) including in his hypothetical his belief that work as a clerk or in a cashier-type job was available to Claimant, and (3)  failing to give the VE any lifting restrictions other than reference to light and sedentary.  These arguments can quickly be rejected.  The ALJ posed a hypothetical to the VE only.  The ALJ's reference to work as a clerk or in a cashier-type job occurred when the ALJ was explaining to Claimant what he wanted to learn from the VE.  The ALJ stated he intended to ask the VE

> to identify jobs that might exist in the regional or national economy in Florida that would permit an employee to change their position.  In other words, you're doing something sitting down or standing.  Not, not very heavy work but obviously work.  You've got to be there 40 hours a week.  You'd get breaks but it's a full time job that would, that would include sitting or standing.  So, in other words, think in terms of perhaps of a cashier in a self service where there's you have to do but basically you could be on a stool or stand.

(R. 717-18) The ALJ's statements did not make him an advocate against the Claimant.  Rather, the ALJ merely was explaining the inquiry and issues to Claimant.  Finally, the ALJ's hypothetical to the VE including restriction to sedentary or light exertion work was sufficient given the ALJ's view of the evidence, which I find supported by substantial evidence.[10]

    *D.  Conclusion*

    For the reasons stated, it is hereby

    RECOMMENDED:

    1.  The decision of the Commissioner be AFFIRMED and judgment be entered in favor of the Commissioner.

---

[10]  The ALJ's hypothetical posed to a vocational expert must comprehensively describe the claimant's limitations.  *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).  Of course, the ALJ is not required to include limitations found not credible, and submits to the expert only those supported by objective evidence of record.  *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996); *McSwain v. Bowen*, 814 F.2d 617, 620 n.1 (11th Cir. 1987).  The ALJ's use of the vocational expert met this standard.

IT IS SO REPORTED at Tampa, Florida on January 5, 2011.


MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE


## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).


cc:    Hon. James D. Whittemore
       Counsel of Record